## EDISON v. HAWTHORNE et al.

(Circuit Court, E. D. Pennsylvania.   January 26, 1901.)

TRADE-NAMES—USE OF INVENTOR'S NAME IN SIGN—RIGHT TO INJUNCTION.

Defendants were formerly agents for the sale of phonographs, which are the invention of the complainant, Edison, and commonly known as the "Edison Phonograph." While such agents they placed over their place of business a sign reading, "The Edison Phonograph Agency," which sign they allowed to remain after the termination of their agency, although they still continued to sell phonographs. Complainant neither manufactured nor sold phonographs, but was a stockholder in the corporations which manufactured and sold the same. Held, that the sign did not imply that defendants were agents for complainant, or that he was concerned in the manufacture of the instruments, but only that they were agents for the sale of the phonographs invented by him, the word "Edison" being merely descriptive of the word "Phonograph," and that plaintiff had no pecuniary interest in the matter, either as an individual or as a stockholder in the manufacturing or selling corporations, which entitled him to maintain a bill to enjoin such use of his name, whatever might be the rights

**of** the corporations to restrain the improper use of the word "Agency" in such sign.

In Equity. Hearing on pleadings and proofs.

Howard W. Hayes, for complainant.
E. Clinton Rhoads, for respondents.

**J. B. McPHERSON,** District Judge. The defendants are merchants of the city of Philadelphia, and (among other articles) deal in phonographs, graphophones, and supplies for such instruments. A sign above their place of business displays the words, "The Edison Phonograph Agency," and the object of this bill is, to quote from the principal prayer, "that the said defendants may be restrained from using the name 'Edison Phonograph Agency' in connection with the said business carried on by them, and from using your orator's name, or any part thereof, in connection with their said business, and from holding themselves out in any way as agents of your orator." The use of the sign began in October, 1894, or thereabouts, when the relation of the defendants to the sale of the Edison phonograph justified them in so describing this branch of their business. They were then actively employed in advertising and advancing the sale of the Edison phonograph, and were properly described as agents for the sale of this instrument. In the early part of the year 1899, however, these relations came to an end with some abruptness, and since that time, although they still sell Edison phonographs, they are in no sense agents, either for the corporation that manufactures the phonograph or for the corporation that sells it. Mr. Edison, as an individual, neither manufactures nor sells. Before the bill was filed, also, the defendants used stationery on which the word "Agency" or "Agents" appeared; but as there has been no such use since the filing of the bill, and none is contemplated, no further attention need be paid to this particular item of complaint.

The complainant's counsel submits three propositions for consideration, which I shall answer briefly in their order. The first is this: "(1) The words 'The Edison Phonograph Agency' imply to the public that the persons using them are agents for Thomas A. Edison, and therefore Mr. Edison may prevent the unauthorized use of the term." To this I am unable to agree. In my opinion, the words do not mean that the defendants are agents for Mr. Edison personally, but merely that they are agents for some person, who is neither named nor suggested, but who is engaged in the sale of the Edison phonograph. It is true that the word "Edison" is superfluous, for there is no other phonograph except the instrument invented by Mr. Edison. Other talking machines are of different types, and have different names, such as the graphophone or the gramophone. But the fact that there is no other phonograph is certainly not known by every person,—probably is not generally known by the public, although the trade may be better advised,—and the word "Edison" is therefore almost universally used in connection with the word "phonograph." Thus used, it is merely descriptive, and means only that the phonograph was invented by Mr. Edison. It is useless to speculate concerning the change in meaning that might come over

the phrase, if there were other phonographs than the instrument invented by Mr. Edison. At present there are no such phonographs, and the inquiry would therefore be profitless. I think it is clear that upon the sign in controversy the word "Edison" is descriptive, and is connected with "Phonograph," and not in the least with "Agency."

The second and third propositions raise substantially the same question. They are as follows:

"(2) The words 'Edison Phonograph' imply to the public a phonograph in the manufacture of which Mr. Edison is concerned; and if, as the defendants insist, the words 'Edison Phonograph Agency' imply merely an agency for Edison phonographs, and not for Mr. Edison personally, still he has such a pecuniary interest in the matter as to entitle him to prevent their unauthorized use.

"(3) If the words 'Edison Phonograph' mean merely the machine invented by Mr. Edison, regardless of its place of manufacture, still Mr. Edison has such a pecuniary interest in the matter as to entitle him to prevent a person, not an agent for their sale, from calling himself the 'Edison Phonograph Agency.' "

As I have already said, I am of opinion that the words "Edison Phonograph Agency" mean merely an agency for the sale of the phonograph invented by Mr. Edison. I am also of opinion, in reply to the second proposition, that they do not imply that Mr. Edison is personally concerned in the manufacture. The idea conveyed by the phrase "Edison Phonograph" is an idea of the instrument itself, —the talking machine that is the child of Mr. Edison's brain,—and I find no suggestion in it concerning the person who is engaged in the manufacture.

The hypothesis of the third proposition is correct,—that the words "Edison Phonograph" mean merely the machine invented by Mr. Edison, regardless of its place of manufacture; but I disagree with the conclusion. The correctness of this conclusion depends upon the evidence, and the evidence does not establish that Mr. Edison has such a pecuniary interest in the matter as to give him a standing to prosecute this bill. It is undisputed that when this suit was brought, and for about two years before, all phonographs made in this country—indeed, I think, all phonographs without exception— were manufactured by a corporation known as the "Edison Phonograph Works," whose plant is situated at East Orange, N. J., and that all phonographs thus manufactured were sold by another corporation, also having its principal place of business at East Orange, known as the "National Phonograph Company." These corporations have the exclusive right to manufacture and sell, respectively. It is true that in each of these companies Mr. Edison is a large stockholder, but they are nevertheless distinct legal entities, and, if any person is injured by the defendants' sign, it is they, or one of them, and not he. To my mind, it is clear that the complainant has no standing to bring this suit, either as an individual or as a single stockholder in one or both of the corporations just named, and therefore that the bill must be dismissed, with costs. But, in order to prevent further litigation by the proper complainant, I think it advisable to add that the use of the word "Agency" is no longer justifiable, and should be discontinued without delay. Manufacturing

Co. v. Shakespear, 39 Law J. Ch. 36.  If the defendants have suffered a legal wrong by being deprived of the agency which they formerly enjoyed, or by the subsequent conduct of the National Phonograph Company, the courts will afford them redress.  But such a wrong, or such conduct, does not justify them in declaring to the public that they still retain an agency which has been taken away.  But, as the defendants still continue to sell genuine Edison phonographs, they are entitled to retain the rest of the sign.

A decree dismissing the bill may be prepared.